IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GLENN H. STEPHENS, III,    )
                           )
        Plaintiff          )
                           )
    v.                     )        1:15-cv-00726 (LMB/IDD)
                           )
UNITED STATES OF AMERICA,  )
                           )
        Defendant.         )

## MEMORANDUM OPINION

Before the Court are the Defendant's Motion to Dismiss [Dkt. No. 4] and the Plaintiff's

Second Motion to Strike and Motion Opposing Subtitution [sic] and Dismissal [Dkt. No. 14],

Plaintiff's Motion for Sanctions [Dkt. No. 16], and Plaintiff's Motion in Limine to Exclude or

Redact [Dkt. No. 23]. For the reasons that follow, the United States' Motion to Dismiss will be

granted and all of plaintiff's motions will be denied.

## I.    BACKGROUND

This civil action began in the Falls Church General District Court, where plaintiff Glenn

H. Stephens III ("Stephens") filed a Warrant in Debt against Tina Quarles, alleging one count of

defamation per se. Warrant in Debt [Dkt. No. 1-1]. Stephens, an employee of private contractor

Panum LLC, was assigned as an Equal Employment Opportunity ("EEO") Specialist for the

United States Department of Agriculture ("USDA")'s Office of Adjudication, Office of the

Assistant Secretary for Civil Rights ("OASCR"). Memorandum of Law in Support of

Defendant's Motion to Dismiss [Dkt. No. 5] ("MTD Br.") at 1. Stephens worked in the

Employment Investigations Division ("EID") of OASCR. Brief in Support of Plaintiff's Second

Motion to Strike and Motions Opposing Subtitution [sic] and Dismissal [Dkt. No. 15] ("MTD

Opp'n Br.") at 2-3. As an EEO Specialist, Stephens was assigned a certain number of cases to

oversee during the EEO adjudication process. Reply Memorandum of Law in Support of

Defendant's Motion to Dismiss and in Opposition to Plaintiff's Second Motion to Strike [Dkt.

No. 20] ("MTD Reply Br.") at 3.

Tina Quarles worked as a Senior EEO Specialist in EID and was assigned as "Acting

Team Lead" when the alleged defamation occurred. Id. at 2-3. Quarles' responsibilities included

reviewing other EEO Specialists' cases, particularly to ensure compliance with EID procedures

and timeliness requirements. Id. at 4.

On April 10, 2015, an individual from the USDA's Food Safety and Inspection Service

("FSIS") e-mailed Quarles to ask about a particular EEOC case. Id. This individual requested

that EID forward the Report of Investigation ("ROI") for the case and update the online case

tracking system. Id. Quarles responded twenty minutes later with an e-mail in which she stated

that the case had been processed by one EID member and was then "taken over for review by

Glenn [Stephens]. Glenn sent case back for modification. I am not sure when the ROI was

distributed...Glenn provide the ROI..." Id.; see also Bill of Particulars [Dkt. No. 10-1] at 4. One

month later, on May 12, 2015, Stephens was told that his contract would not be renewed. Reply

Br. at 6.

On May 21, 2015, without describing any facts but merely claiming defamation per se,

Stephens filed the Warrant in Debt naming Quarles as the defendant. Id. On May 22, 2015,

Stephens filed an EEO complaint against Quarles and the Acting Chief of EID, Dona Marshall.

Declaration of Candace B. Glover [Dkt. No. 5-2] ("Declaration") at 2.  In that complaint,

Stephens alleged that Quarles and Marshall harassed, bullied, and discriminated against him

because he was the only white employee in EID, that Quarles falsified work reports and records,

2

insulted the way he handled cases, and, in concert with Marshall, sought to drive him out of EID. Id. at 6-7. Stephens waived his right to remain anonymous during the counseling stage of the EEO process. Id. at 5.

On June 9, 2015, the United States removed Stephens' defamation claim to this court pursuant to the provisions of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as the Westfall Act) and the Federal Tort Claims Act ("FTCA"). Notice of Removal [Dkt. No. 1] at 1-2. On the same day, the United States Attorney for the Eastern District of Virginia certified that he was "familiar with [Stephens'] allegations made in the warrant of debt" and that, "[o]n the basis of the information now available with respect to the claims set forth therein," Tina Quarles was acting within the scope of her federal employment at the time of the incident out of which the claim arose. Certification [Dkt. No. 1-2]. On the basis of this certification, the United States was substituted as the party defendant. Notice of Substitution [Dkt. No. 3] at 1.

Although Stephens received actual notice of the removal on June 10, 2015, on June 15, he mailed a Bill of Particulars to the Clerk of the Falls Church General District Court. Notice of Continued Filings in State Court [Dkt. No. 10] ("Notice of Filings") at 1. In that Bill of Particulars, Stephens specified that the defamatory statement at issue was Quarles' statement in the April 10 e-mail that the case was "taken over for review by Glenn...I am not sure when the ROI was distributed," and he alleged that the e-mail "imput[ed] that [Stephens] lacked the skills of [his] profession, thereby damaging [his] reputation," that Quarles made the statement with knowledge of its falsity or with recklessness as to its falsity, and that the statement led to the termination of his contract. Bill of Particulars at 1.

3

On June 16, 2015, the United States moved to dismiss this action for lack of subject matter jurisdiction. Motion to Dismiss [Dkt. No. 4] ("MTD") at 1. The United States later filed a notice of continued filings in state court, which contained redacted versions of the Bill of Particulars and other exhibits filed by Stephens in state court. Notice of Filings at 1. These redactions pertained to the personal information of third parties. Reply Br. at 6.

On June 24, 2015, Stephens filed an FTCA claim with the USDA based on Quarles' alleged defamation, MTD Opp'n Br. at 11, and on July 7, 2015, he filed in this Court a Motion to Strike from the record all documents and information related to his EEO claim, arguing that the documents contained unredacted "personally identifiable information" ("PII"), the posting of which violated the Privacy Act. Plaintiff's First Motion to Strike [Dkt. No. 12] at 1. This Court found that not only was the information at issue not protected under Fed. R. Civ. P. 5.2 or by E.D. Va. Local Civil Rule 7(C), but that Stephens waived any potential protection by publicly filing the same information as well as by waiving his right to anonymity in the EEO counseling. Order [Dkt. No. 18] at 1-2. Accordingly, Stephens' first Motion to Strike was denied. Id.

On July 9, 2015, Stephens filed a Second Motion to Strike in which he objected to the United States being substituted as the defendant and opposed the Motion to Dismiss which he claimed failed to conform to Local Rule 7(F)(3). Stephens also filed a Motion for Sanctions based on the government's "intentional posting of [Stephens'] PII on Pacer." Additionally, on July 23, 2015, Stephens filed a Motion in Limine to Exclude or Redact the EEO Intake Form he previously sought to strike from the record.

4

## II.   DISCUSSION

### A. <u>Summary of Issues</u>

Regarding the Motion to Dismiss, the United States argues that this court lacks subject matter jurisdiction because Stephens failed to present a proper FTCA claim to the USDA and that even if he had complied with the FTCA, his claim would fail because the United States has not waived sovereign immunity for defamation claims. MTD Br. at 5-7. Stephens concedes that his defamation claim is barred by sovereign immunity if the government is the properly substituted defendant, but argues that the scope of employment certification is invalid. MTD Opp'n Br. at 13 n. 13. In particular, Stephens argues that the government's certification was a nullity and that Quarles in fact acted outside the scope of her employment. Id. at 15-18. The United States contends that these arguments misconstrue the burden-shifting effect of certification and that it is Stephens, not the government, who has failed to carry the burden of rebutting the certification. MTD Reply Br. at 7-8.

Stephens' Motion <u>in Limine</u> contends that this Court erred in rejecting his first Motion to Strike, MIL Br. at 6, and argues that the Court should exclude information related to his EEO filings due to irrelevancy, prejudice, and violation of the Privacy Act. MIL Br. at 1-5. The United States counters that the EEO filings are relevant and admissible, and that disclosure does not violate the Privacy Act, the Federal Rules of Civil Procedure, or the Local Rules. Memorandum of Law in Opposition to Plaintiff's Motion in Limine to Exclude or Redact [Dkt. No. 26] ("MIL Opp'n") at 2-3.

Stephens' Motion for Sanctions reiterates his argument that disclosure of his EEO Intake Form violated the Privacy Act. Brief in Support of Plaintiff's Motion for Sanctions and Evidence Tampering [Dkt. No. 17] ("Sanctions Br.") at 2. He also claims that the government tampered

5

with evidence by redacting the personal information of third parties from its filings. Id. at 3-4. On these bases, he requests that the Court issue sanctions against the Assistant United States Attorney. Id. at 1. The United States responds that, as demonstrated by the order denying plaintiff's first Motion to Strike, its filings did not violate the Privacy Act or any local rules. Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions and Evidence Tampering [Dkt. No. 21] ("Sanctions Opp'n") at 2. The government also characterizes its redactions as an appropriate means of protecting third parties. Id. at 6-7.

Stephens' Second Motion to Strike claims that the United States' brief supporting the Motion to Dismiss does not conform to the requirements of Local Civil Rule 7(F)(3). MTD Opp'n Br. at 1. The United States responds that its brief did in fact conform to the rule and that any alleged shortcomings in font size do not constitute grounds to strike the brief. MTD Reply Br. at 21-22.

## B. Defendant's Motion to Dismiss

The United States moved to dismiss the complaint due to lack of subject matter jurisdiction, asserting that Stephens' action is barred by the Westfall Act, the FTCA, and sovereign immunity. Before a federal court may rule on the merits of a claim, that claim must first "invoke the jurisdiction of the court." Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). Under Fed. R. Civ. P. 12(b)(1) a civil action must be dismissed if the court lacks subject matter jurisdiction. Wild v. Gaskins, 30 F. Supp. 2d 458, 460 (E.D. Va. 2014) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of proving subject matter jurisdiction. Evans v. B.F. Perkins Co., A. Div. Of Standex Intern. Corp., 166 F.3d 642, 647 (4th Cir. 1999).

Sovereign immunity is jurisdictional in nature. FDIC v. Meyer, 510 U.S. 471, 475 (1994). Absent an explicit waiver by Congress, sovereign immunity protects the United States from suit

6

and denies courts jurisdiction over claims against the United States. Id. The FTCA serves as a waiver of the United States' sovereign immunity. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute allows citizens to hold the United States liable for torts in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1); however, this waiver is a limited one, as the various prerequisites and exceptions to the statute demonstrate. Medina, 259 F.3d at 223; see also Henderson v. U.S., 785 F.2d 121, 123 (4th Cir. 1986). The presentment requirement constitutes such a prerequisite and the intentional tort proviso is one of the exceptions.

Under the presentment requirement of 28 U.S.C. § 2675(a), a court may exercise jurisdiction over an FTCA claim only if the plaintiff first presented an administrative claim to the appropriate federal agency and received a final written denial of that claim. 28 U.S.C. § 2675(a). Presentment requires both "written notice sufficient to cause the agency to investigate" and "a sum-certain value on the claim." Ahmed v. United States, 30 F.3d 514, 517 (4th Cir. 1994) (citing Adkins v. United States, 896 F.2d 1324, 1326 (11th Cir. 1990)). The presentment and denial must occur before filing an action in court. 28 U.S.C. § 2675(a) ("the claimant shall have first presented the claim to the appropriate...agency and his claim shall have been finally denied"); see also Brown v. United States, 933 F. Supp. 2d 780, 787 (E.D. Va. 2013) (denying a defamation claim under the FTCA partly because an administrative claim was not first presented). The presentment requirement is "jurisdictional and may not be waived." Henderson, 785 F.2d at 123. Therefore, if a plaintiff fails to file a timely claim with the proper agency, "dismissal is mandatory." Id. It is undisputed that Stephens failed to file a sufficient

7

administrative claim before commencing this civil action. Specifically, his administrative claim was filed on June 24, 2015, eight days after his complaint was removed to this court.[1]

Even if Stephens had satisfied the presentment requirement, his claim would be barred by the "intentional tort proviso" of the FTCA. See 28 U.S.C. § 2680(h); Medina v. United States, 259 F.3d 220, 224 (labeling 28 U.S.C. § 2680(h) the "intentional tort proviso"), which explicitly excludes claims based on libel or slander from the FTCA's waiver of sovereign immunity. See 28 U.S.C. § 2680(h). In fact, Stephens concedes that if the United States is the properly substituted defendant in this action his defamation claim would be barred by sovereign immunity. Opp'n Br. at 13 n.13.

Because both the requirements of the FTCA and sovereign immunity bar Stephens' claim, the defendant's Motion to Dismiss will be granted due to lack of subject matter jurisdiction.

Although Stephens does not dispute that sovereign immunity bars defamation claims against the United States, he contests whether the United States is the properly substituted defendant in this action. If the defendant in a state court action for injury or loss of property is an employee of the federal government, the Westfall Act allows for removal of that action to the district court where the state action is pending, Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 420 (1995) (citing 28 U.S.C. § 2679(d)(2)), upon certification by the Attorney General that the defendant-employee was acting within the scope of her employment "at the time of the incident

---

[1] Stephens EEO Intake Form would not satisfy the presentment requirement because although discussing a broad range of issues, it does not refer to the April 10 e-mail or to any allegations of defamation. Declaration at 6-7. Therefore, the EEO complaint was insufficient to put the USDA on notice to investigate any incident of alleged defamation, much less the April 10 incident. Even if it were sufficient in that respect, however, it did not contain a sum certain value. Additionally, it was not finally denied by the USDA. As a result, Stephens' EEO complaint did not, and could not, satisfy the presentment requirement.

out of which the claim arose." 28 U.S.C. § 2679(d)(2). Upon certification, the United States is substituted as the party defendant, and the action falls under the purview of the FTCA. Id.

Removal is conclusive upon certification.[2] Gutierrez de Martinez, 515 U.S. at 432-34 (1995); however, the scope of employment certification remains reviewable if challenged. Id. Once challenged, the United States Attorney's certification functions as prima facie evidence that the defendant employee was acting within the scope of her employment with respect to the conduct at issue, Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir. 1997), regardless of whether it "details and explains the bases for its conclusions." Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997). The certificate need only "closely track[] the language of the Westfall Act" to be "formally in order." Osborn v. Haley, 549 U.S. 225, 244 (2007) (deeming valid a certification that mirrored the language of § 2679(d)(2)). Moreover, the certification is not controlled by the plaintiff's allegations, and it "must be respected unless and until" the court determines that the employee in fact acted outside the scope of her employment. Id. at 228. Therefore, not only does the certification not have to mirror the plaintiff's factual allegations to be presumptively valid, but the level of detail and explanation in the certification becomes relevant only *after* the plaintiff successfully rebuts it. Maron, 126 F.3d at 323.

Upon certification, the burden shifts to the plaintiff to prove "by a preponderance of the evidence" that the defendant employee acted outside the scope of her employment. Gutierrez de Martinez, 111 F. 3d at 1153. The district court reviews the certification de novo when challenged, but the plaintiff must offer specific evidence in rebuttal, rather than "mere

---

[2] Stephens' arguments regarding the "presumption against removal jurisdiction," MTD Opp'n Br. at 11-13, are irrelevant, as it is well-settled that the Westfall Act makes removal based on certification conclusive. Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 432-34 (1995). Therefore, no additional analysis of removal is necessary.

conclusory allegations and speculation." Id. at 1153-54, 1155. If the plaintiff's evidence is insufficient to rebut the certification, then the certification stands as conclusive. Id. at 1155.

Stephens seeks to alter this well-established procedure and misconstrues the relevant requirements and burdens,[3] by arguing that the government's certification is a "nullity" because it lacks details, explanations, and evidence. MTD Opp'n Br. at 20. He also asserts that the United States Attorney's alternate use of "claims" and "claim" demonstrates a lack of familiarity with the underlying allegations and raises an inference of perjury. MTD Opp'n at 16-17. In this vein, Stephens argues that the United States could not have been familiar with the details of his claim because he had not yet filed the Bill of Particulars identifying the alleged defamation. Id. This argument places a higher burden on the government than is required. The certification here "closely tracked" the language of the Westfall Act and is consequently valid under *Osborn*.[4] Osborn v. Haley, 549 U.S. 225, 244 (2007). The government was not required to provide details, explanations, or evidence to meet its initial burden. Maron, 126 F.3d at 323. Moreover, the government's failure to do so, like its varying use of the words "claim" and "claims," does not prove that it lacked familiarity with the nature of Stephens' allegations, and it certainly does not raise an inference of perjury. See MTD Reply Br. at 16 (stating that the Justice Department engaged with the USDA to determine the nature of the facts giving rise to Stephens' claim). The

---

[3] The procedures and allocation of burdens here are not only well-settled law in the Fourth Circuit but are followed by other circuit courts. See, e.g., Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997) ("[w]e join with our sister circuits in placing the burden of proof on the plaintiff to refute the certification of scope of employment...").
[4] The certification states: "[I] hereby certify that I am familiar with the allegations made in the warrant of debt filed by the plaintiff...On the basis of the information now available with respect to the claims set forth therein, I hereby find and certify that the named defendant....was acting within the scope of her federal...employment at the time of the incident out of which the plaintiff's claim arose." Certification at 1. This language mirrors that of the Westfall Act and the certification upheld in Osborn. 28 U.S.C. § 2679(d)(2); Osborn v. Haley, 549 U.S. 225, 244 (2007).

government was not required to rely on Stephens' allegations in making the certification, nor was the government required to elaborate the factual bases of its certification. Rather, the certification, as written, conclusively established a basis for removal of this litigation to federal court and shifted the burden to Stephens to rebut the scope of employment determination. Although Stephens has attempted to prove that Quarles acted outside the scope of her employment, his arguments regarding the insufficiency of the certification are simply unsubstantiated attempts to subvert established procedures.

Stephens further argues that, even if the certification established the government's prima facie case, the Court should find that Quarles was not acting within the scope of her employment. To determine whether a plaintiff has met his burden to rebut the government's prima facie case, the court applies the respondeat superior law of the state in which the conduct occurred. Jamieson v. Wiley, 14 F.3d 222, 237 (4th Cir. 1994). Both parties agree that District of Columbia law governs the respondeat superior inquiry in this action. MTD Reply Br. at 9. In the District of Columbia, the conduct of an employee is within the scope of employment if it is of the kind he is employed to perform; it occurs substantially within the authorized time and space limits of his employment; and it is actuated, *at least in part*, to serve the master. Restatement (Second) of Agency § 228(1) (1958) (emphasis supplied). The conduct must be "of the same general nature as that authorized" or must be "incidental to the conduct authorized." § 229(1).

The proper inquiry in intentional tort cases focuses on the "underlying dispute or controversy, not on the nature of the tort." Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 664 (D.C. Cir. 2006) (quoting Weinberg v. Johnson, 518 A.2d 985, 992 (D.C. App. 1986)). In Ballenger, a congressman was sued for making an allegedly defamatory statement during a phone conversation. Id. The court designated the phone conversation as the "underlying

11

dispute," and held that the "appropriate question" was whether that phone conversation, not the allegedly defamatory sentence within it, was the type of conduct the congressman was employed to perform. Id. Similarly, in Wuterich, the court deemed a congressman's media interviews to be the "underlying dispute." Wuterich v. Murtha, 562 F.3d 375, 384 (2009). Because the interviews were part of the congressman's employment duties, the court found that the allegedly defamatory statements made during those interviews were within the scope of employment. Id.

Stephens' arguments on this issue again misconstrue the relevant burdens. Stephens contends that the government fails to show that Quarles was acting within the scope of her employment. MTD Opp'n at 18 ("the Government, as the proponent of the motion, has the responsibility of establishing a sufficient basis for granting it"); however, it is Stephens who has the burden of providing specific evidence that Quarles was not acting within the scope of her employment, particularly because the applicable respondeat superior law places her conduct squarely within that scope. According to the facts in the record, Quarles' duties as Acting Team Lead for EID entailed monitoring the progress of EEO cases assigned to other EEO Specialists, including those assigned to Stephens. MTD Reply Br. at 4. The April 10 e-mail was sent from Quarles' work e-mail, during work hours to respond to a specific request about the status of an EEO case. Id. Therefore, regardless of the contents of her e-mail, sending the e-mail was conduct of the kind she was employed to perform. It also occurred during the authorized time and space limits of her employment and in response to a question generated by another office in her agency.

Stephens argues that in that e-mail Quarles defamed him exclusively to serve her own goal of driving him out of his job, and that this alleged goal was neither authorized nor incidental to her employment. MTD Opp'n at 24. The intentional nature of the alleged tort does not

disprove that Quarles acted, at least in part, to serve her employer. The relevant conduct is the responding to a work-related inquiry by sending the April 10 e-mail, not the broader campaign of harassment that Stephens alleges. See id. at 4-8.[5] Under Ballenger, Quarles' e-mail, not the allegedly defamatory statement within that e-mail, constitutes the "underlying dispute or controversy" in this case. Because Quarles sent the e-mail in response to a work-related request it was the kind of conduct authorized by Quarles' employment, and therefore was within the scope of her employment. Furthermore, even if part of her motivation in sending the April 10 e-mail was to disparage or defame Stephens, and even if the statement made in that e-mail was false, Quarles' conduct was at least partially motivated by a desire to discharge her duties. That is all that the law requires. Accordingly, Stephens has failed to rebut the scope of employment certification.

In the alternative, Stephens requests that the Court hold an evidentiary hearing on the existing record or allow for limited discovery to resolve the scope of employment issue. MTD Opp'n at 28 (requesting an "Osborn hearing"). Such measures are unnecessary and contrary to the proper procedures under the Westfall Act and the FTCA.

Although a district court may, in its discretion, allow for limited discovery or an evidentiary hearing to determine the validity of a certification, these procedures are appropriate only if there is an issue of material fact remaining after (1) the plaintiff has successfully rebutted the certification decision and (2) the government has responded with additional evidence. Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1155 (4th Cir. 1997). Only

---

[5] Stephens also argues that Quarles' subsequent removal from her position as Acting Team Lead demonstrates that she was not acting within the scope of her employment when she sent the e-mail. MTD Opp'n at 24. There is no evidence, however, that Quarles was removed because the April 10 e-mail exceeded the scope of her duties, nor is that a logical inference to draw. This argument functions as another conclusory allegation insufficient to overcome the government's prima facie case.

then may the court authorize discovery, and only if that discovery is inadequate should the court hold an evidentiary hearing. Id. These narrowly tailored procedures reflect the need to avoid protracted litigation under the Westfall Act. Id.; see also Maron v. United States, 126 F.3d 317, 327 (4th Cir. 1997).

As the preceding discussion establishes, Stephens has not successfully rebutted the government's certification. Therefore, there is no issue of material fact in dispute, and neither discovery nor an evidentiary hearing would be appropriate. For all these reasons, the defendant's certification will not be disturbed.

## C. Plaintiff's Remaining Motions

In his Motion in Limine Stephens moves to exclude the unredacted version of his EEO Intake Form from the public record on the grounds that the record is irrelevant and, in the alternative, that any relevance is substantially outweighed by the risk of confusion. MIL Br. at 2-3. Contrary to his argument, the EEO Intake Form provides relevant background information needed to understand the context of his defamation claim and even Stephens included information from that form, such as the allegation that Quarles had falsified records, in his pleadings in this litigation.

Alternatively, Stephens seeks exclusion of the form on the basis that the Intake Form was obtained and disclosed in violation of the Privacy Act. Although the Privacy Act generally prohibits federal agencies from disclosing personal information, disclosure is permitted "for a routine use." Fattahi v. Bureau of Alcohol, Tobacco & Firearms, 328 F.3d 176, 178 (4th Cir. 2003), aff'd, 328 F.3d 176 (4th Cir. 2003) (citing 5 U.S.C. § 552a(b)(3)). A routine use must be consistent with the agency's purpose in collecting the information and the agency must have published that use in the Federal Register. Id. (citing 5 U.S.C. §§ 552a(a)(7) and 552a(e)(4)(d)).

14

Such a routine use need only be "reasonably necessary" to serve an important public policy. Id. at 180. The USDA collects official personnel records, including records of complaints and grievances, for routine uses that include referral to the Department of Justice and to courts for use as evidence in judicial proceedings. Privacy Act of 1974: Systems of Record, 49 Fed. Reg. 48071-01, 48076-48077.

Stephens voluntarily disclosed the information at issue on the Intake Form, which in turn was disclosed to the USDA by Stephens and collected as part of his personnel records. The USDA then disclosed the Intake Form to the Department of Justice as evidence after plaintiff chose to sue a federal employee. This use constitutes a "routine use" of this record. Therefore, under the provisions of the Privacy Act, this information was neither illegally obtained nor illegally disclosed. Moreover, much of the information in it was disclosed by Stephens himself in multiple filings in this litigation.

Stephens claims that he did not waive protection of the personal information in the form by including personal information in his pleadings because that inclusion was "a simple mistake." MIL Br. at 5 n.4. He states that he "wrongly assumed that his filings would not be accessible on PACER," and therefore seeks relief under Fed. R. Civ. P. 5.2. Id.

Stephens included his name, home address, telephone number, and e-mail address on the cover page of his motion for sanctions. Sanctions at 1. Moreover, Stephens clearly has familiarity with the Local Civil Rules as he relied on them in his Motion for Sanctions and Second Motion to Strike. These same Local Rules require that a non-prisoner pro se litigant like Stephens disclose his address and telephone number in filings. E.D. Va. Local Civil Rule 7(B).

Finally, Stephens argues that he must be afforded the opportunity to show good cause for redacting his personal information. In this vein, he contends that in denying his previous Motion

15

to Strike the Court committed reversible error by failing to balance Stephens' private interests in certain personal information against the public's right to access judicial records. MIL at 6-7 (citing Fed. R. Civ. P. 5.2(e) and In re Knight Publishing Co., 743 F.2d 231 (4th Cir. 1984)). This argument misstates the relevant inquiry and minimizes the presumption favoring public access to judicial records.

Although there is a common law right to inspect and copy judicial records and documents, Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978), this right is not absolute, and can be denied where court records might become "vehicle[s] for improper purposes," including libelous statements, public scandal, or sensitive business information. Id. at 598. According to case law on which Stephens relies, any such countervailing interests must "heavily outweigh" the public interest in access. Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988). The party seeking to bar public access bears the burden of showing such a significant interest. Id.

Stephens has not demonstrated good cause or a significant interest that heavily outweighs the public interest. His interest in protecting his personal information does not rise to the level of protection against libel, scandal, or national security. See Sanctions Br. at 7 (citing In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986) (discussing closure of a criminal trial on the basis of national security)). As discussed in the Order denying Stephens' first Motion for Sanctions, the information at issue is not protectable personal information, and was voluntarily disclosed by Stephens in both his EEO Intake Form and in multiple unredacted court filings. Order at 2. As such, it certainly does not amount to a significant interest that outweighs that of the public's right to access. Accordingly, Stephens does not demonstrate any basis on which the

16

EEO Intake Form should be excluded or redacted, and for these reasons his Motion <u>in Limine</u> will be denied.

Stephens' Motion for Sanctions asks the Court to issue sanctions against Assistant U.S. Attorney Free for intentionally posting his personally identifiable information to PACER in violation of the Privacy Act and for tampering with evidence by redacting information about third parties. Sanctions Br. at 1-4. The motion is meritless. As discussed above, the personal information about which he complains is not protectable. Accordingly, sanctions are inappropriate with respect to the disclosure of Stephens' personal information.

Stephens also argues that the United States' redaction of the personal information of third parties constitutes evidence tampering and merits the imposition of sanctions. Sanctions Br. at 3-4. Plaintiff does not cite any authority for the proposition that basic redactions of the sort at issue rise to the level of evidence tampering, nor does there appear to be any legal basis for his argument. Even if the United States redacted information unnecessarily, there is no indication that the government did so in bad faith.

The United States added gray boxes to a copy of Stephens' Bill of Particulars and the EEO Intake Form to redact the personal information of parties protected under the Privacy Act. Sanctions Opp'n at 9. Specifically, the government sought to redact the "names of non-party complainants and EEO case references." <u>Id</u>. at 10 n.1. The government then filed that redacted copy after notifying both plaintiff and the Court that the document had been redacted. <u>Id</u>. at 9. These actions did not in any way alter the underlying documents. Moreover, these steps complied with the government's obligations to protect the rights of third parties. <u>Id</u>. at 6. Stephens waived his own rights to privacy by proceeding with his EEO complaint and by filing as a <u>pro se</u> litigant, but the third parties not involved in this litigation did not. Finally, even if the

17

government redacted excessive information, this redaction did not destroy evidence and, in the absence of additional evidence, does not demonstrate bad faith. Accordingly, there is no evidence of intentional misconduct or bad faith on the part of the government, and sanctions are not warranted.

### D. Plaintiff's Second Motion to Strike

Stephens claims that the United States' Memorandum of Law in Support of Defendant's Motion to Dismiss [Dkt. No. 5] violates the local rules regarding font size and should be stricken from the record.

Local Civil Rule 7(F)(3) requires that all briefs be written in Times New Roman 12-point font. E.D. Va. Local Rule 7(F)(3). Stephens contends that the text and footnotes in the government's brief are smaller than 12-point font and that this failure makes the brief inadmissible. MTD Opp'n Br. at 1-2. In rebuttal, the government affirms its compliance with that rule, MTD Reply Br. at 21, and the government's brief does appear to comply with the local rules.

Even if there is some variance in the font size, Stephens has not established that such an error is grounds for striking the brief. Instead, he cites two cases, both of which pertain to defects in removal petitions, rather than incorrect font size, and neither of which is controlling authority in this jurisdiction. See Beard v. Lehman Brothers Holdings, Inc., 458 F.Supp. 2d 1314, 1318-21 (M.D. Ala. 2006) (discussing the effect of a failure to comply with the Rule 11 signature requirement in a removal petition); Production Stamping Corp. v. Md. Cas. Co., 829 F. Supp. 1074, 1077-78 (E.D. Wis. 1993) (discussing the requirement that a defendant affirmatively and unambiguously consent to removal). Assuming arguendo that the United States failed to comply with the local rule, this defect is present in a supporting brief, not a removal petition, and it does

18

not violate the Federal Rules of Civil Procedure. Accordingly, Stephens has shown no grounds on which a violation of the font size requirement would merit striking the brief from the record, and the second motion to strike will be denied.

### III.   CONCLUSION

For the reasons stated above, the United States' Motion to Dismiss will be granted and Stephens' motions will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this _14th_ day of August, 2015.

Alexandria, Virginia

                                          /s/
                                   _____
                                   Leonie M. Brinkema
                                   United States District Judge